*BALLIO & AL. vs. WILSON.*

A sale, made without the authority of justice, is not binding on the creditors of a succession, and they have a right to call on the person making it to pay them the value of the object sold.

Creditors are not bound by a decree of a court of probates, which they had no opportunity to oppose.

A tutor is subrogated to the rights of a creditor paid by him.

APPEAL from the court of probates for the parish of Rapides.

PORTER, J. delivered the opinion of the court. This is an appeal, taken from a decree of the court of probates, liquidating the claims against the succession of J. H. Gordon, deceased, and establishing the order in which they should be paid.

The tutrix, who administered the estate for the minor heirs, with the benefit of an inventory, has appealed, as has several of the creditors, viz. Wm. Wilson, John L. Ballio, Joseph Lattier, Francis Lattier, and Michel Lattier.

The tutrix is charged, in the account, with the amount of a carriage, belonging to the succession, sold by her at private sale. She offered, as a set-off against it, the note of the person to whom she alleges the carriage was sold. This was objected to, on the ground, that she had no right to dispose of the property of the estate at private sale, and the court below sustained the objection. We think it quite clear, the court did not err in doing so. A sale, made without the authority of justice, was not binding on the creditors of the succession, and they have a right to call on the person making it, to pay them the value of the object sold.

It was further urged, in argument, that the proceeds of the sale had, in fact, been paid to the person from whom the deceased purchased the carriage in his life time, and to whom he was indebted for its price at his decease. Whatever may be the facts, on this point, there is no legal evidence on the record, either of the existence of the debt, nor of its payment.

She also complains, that she is debited with a note of one thousand dollars, due by Wm. Wilson to her deceased husband, although the said note was compensated by the

professional services rendered by him to the estate, and that she could not collect it. The judge below allowed her $300, as the amount due the attorney, and made her responsible for the balance.

The evidence of a gentleman of the profession was taken, who made oath he was of opinion, the charge of $1,000 was reasonable, and that he would not have undertaken it himself for that sum, foreseeing the difficulties of the case.

According to the note of evidence, there were three suits against the succession, in which the attorney appeared and acted for the estate. We think, that $100 for each of these suits, and the sum of $300 for the services rendered in settling the estate, is a fair compensation, considering the amount in dispute and the labour expended.

We have next to consider the errors, alleged by Wilson, one of the appellants.

One of the principal items in his account, consists of a debt, transferred to him by J. & S. Parkins. Of the existence of this debt, no evidence was given on the trial, except that, resulting from an account made by the administratrix, a short time after the decease of the

intestate, of the claims exhibited against the estate, in which this debt of **J. & S. Parkins** is inserted.

This account, although probably presented to the court of probates, was not deposited there, but an order appears of that court, by which several of the creditors are directed to be paid, as privileges of the first class, and the rest of the claims, as exhibited, are to be paid proportionably, as there may be funds.

This order, it is said, forms *res judicata* between all the creditors of the succession, and that it is now too late to dispute the amount of any account directed to be paid by it.

To this pretension, we think the answers, given at the bar, are satisfactory and conclusive. *First*, that the accounts not being filed in the office of the court of probates, among the papers of the succession, none of the other creditors could know what claim was approved or what rejected; and *second*, that it appears to have been made *ex parte*, without notice or citation to persons interested. It has been argued, that we are bound to presume the creditors were regularly cited, before the judge made such a decree. But the

West'n. District.
October, 1829.

BALLIO & AL.
*vs.*
WILSON.

terms of the judgment negative any such idea. It is stated to be given, at the instance of the administratrix, and no mention is made in it, that those who were interested in the estate, were present at the time the decree was rendered, that it was made after hearing the parties, or that they were notified to attend.

We therefore conclude, the inferior court did not err, in rejecting *that part of the claim* which the appellant Wilson complains of, and that it erred in putting the firm of J. & S. Parkins on the tableau, for the remaining portion of the debt. Wilson claims a further credit, for the sum of one hundred dollars, paid a creditor on account of the estate of J. H. Gordon, and we are of opinion it should be allowed. He appears to be a privileged creditor for part of his claim, and a chirographary creditor for the balance. As the debtor had a right to impute the payment to the most onerous demand, the estate has a right to claim a deduction from the privileged debt to the amount, and the appellant is subrogated for the amount he has paid, in the place of the creditor.

The appellants, Ballios, and Lettier, complain, that they were charged with $1,100

more than they received, and that the balance due them was erroneously diminished that much.

The tutrix opposes to this, a judgment rendered by this court, in the October term, 1826, fixing the amount due the appellants at the sum of $5,840. It is contended, this decree has the force of *res judicata*, and precludes all enquiry into the claim now set up.

The appellants, not contesting the principle invoked, assert, that their debt was reduced to that amount, in consequence of credits being given to the estate from returns made by the sheriff, on several executions which had issued in their favour.—That one of these executions was credited by the sum of $1,100 received in a twelve months' bond, and that, subsequent to the judgment fixing the amount due the appellants, the purchaser surrendered the property back to the estate, in consequence of a defect in the title, and that the sum thus debited to them, and for which the estate had credit, was not in fact received by them.

There is no evidence before us, that this loss occurred subsequent to the judgment

liquidating the balance: it was rendered in 1826, and the property was surrendered up by the purchaser in 1824. *The judge, therefore, did not err,* in refusing to add to the claim of the appellants, the amount of the bond.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the cause be remanded to said court, with directions to amend the tableau, according to the principles established in this decree; the costs of appeal, to be paid equally by the appellants.

*Thomas* for the plaintiffs, *Wilson* for the defendant.